**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JAMES ARDITO, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Civil No. 3:04cv1633 (MRK) |
| | : | |
| JO ANN B. BARNHART | : | |
| Commissioner Social Security | : | |
| Administration, | : | |
| | : | |
| Defendant. | : | |

**RULING AND ORDER**

Plaintiff James Ardito brings this action "seeking a review of a decision of the defendant, Commissioner of Social Security, denying plaintiff Social Security Disability Benefits under the Social Security Act." Complaint [doc. #1] at 1. Mr. Ardito argues that he was wrongfully denied benefits for the period between February 1, 1983, and September 30, 1986. Mr. Ardito has moved to reverse the Commissioner's decision [docs. ## 16, 35], while the Commissioner has moved for an affirmance [docs. ## 20, 36]. The Court agrees with Mr. Ardito, and therefore reverses the Commissioner's decision and remands to the Social Security Administration ("SSA") for a determination of benefits to which Mr. Ardito is entitled.

**I**

James Ardito was born in 1943 and began employment in the construction industry in approximately 1969. Administrative Record [doc. #15] at 77; *id.* at 996. In July 1980, he injured his back while working on the Yale New Haven Hospital complex. *Id.* at 997. Dr. Arthur Taub examined Mr. Ardito and noted that Mr. Ardito experienced pain in his "left upper extremity and neck, then back and right lower extremity." *Id.* at 328. Mr. Ardito was referred to an orthopaedist,

Dr. Ulrich Weil, who reported that Mr. Ardito was "at present unable to return to gainful employment." *Id.* at 482.

Mr. Ardito was admitted to the Yale New Haven Hospital in May 1981 for a hemilaminectomy and L-5/S-1 diskectomy. He was discharged in June 1981. *Id.* at 135-58. In post-operation visits with his neurosurgeon, Dr. Alvin Greenberg, Mr. Ardito continued to report leg and back pain. *Id.* at 201-03. Dr. Greenberg ordered further testing, which revealed disc herniation. *Id.* at 199-200. Plaintiff was again admitted to the hospital in August 1982, and Dr. Greenberg performed "bilateral laminotomies for excision of herniated disk at L4, 5." *Id.* at 158-180.

In the months following his surgery, Mr. Ardito continued to see Dr. Greenberg, who reported that Mr. Ardito was making progress, though also reported that Mr. Ardito still experienced back and leg pain. *Id.* at 191-96. In April 1983, Dr. Greenberg noted Mr. Ardito's "persistent right leg pain" and "strongly urged [Mr. Ardito] to consider vocational rehabilitation." Dr. Greenberg opined that "[t]here is no way he can return to his former occupation in any modified form." *Id.* at 191.

In June 1983, Mr. Ardito came under the care of Dr. Taub. *Id.* at 327-30. Dr. Taub reported that Mr. Ardito experienced continuing back and leg pain, which he attributed primarily to "discogenic factors" such as "a centrally bulging inter-vertebral disc." *See, e.g.*, *id.* at 309, 314. An examination by Dr. Earl Hoerner, conducted in July at the request of the State Disability Determination Services Bureau, confirmed that Mr. Ardito suffered from "low back disease secondary to two operative interventions," compounded by "exogenous obesity." Dr. Hoerner surmised that Mr. Ardito "would have marked difficulty performing work related activities, such as lifting, carrying, standing or walking," but would have "no difficulty in handling objects." Dr.

Hoerner deferred assessment of Mr. Ardito's sitting ability and deferred to Dr. Greenberg and Dr. Taub on the issue. *Id.* at 488.

By June 1984, Dr. Taub noted that Mr. Ardito had "reached maximum improvement, and ha[d] assigned permanent partial impairment of function of 30%." *Id.* at 302. In July, Dr. Taub increased his assessment to 40% permanent partial impairment of function. He also cleared Mr. Ardito for "sedentary or light work." *Id.* at 300. However, Mr. Ardito continued to report back and leg pain, *id.* at 296-99, and in November Dr. Taub revoked his July assessment:

> Mr. Ardito clearly continues [to be] disabled by virtue of back pain and pain in both lower extremities intermittently. While his condition was thought stable . . . , further events have clearly revealed this not to be the case. At the present time I do not recommend return to the sedentary/light work classification which I recommended [in July].

*Id.* at 295.

Mr. Ardito's next visit with Dr. Taub was in March 1985. Mr. Ardito reported that the stable level of pain he had experienced over the last several months had increased substantially. Dr. Taub noted that the "CT scan and myelogram . . . demonstrate a substantial central invertebral disc herniation" and recommended further testing. *Id.* at 290-91. In April, Mr. Ardito saw Dr. Greenberg, who concluded that Mr. Ardito was "disabled from work." *Id.* at 185. Dr. Greenberg recommended against surgery, citing Mr. Ardito's "excessive weight." *Id.* at 282.

Over the next several months, Mr. Ardito's symptoms "varied, with intermittent back pain and pain in both lower extremities." *Id.* In January 1986, Dr. Greenberg reiterated his conclusion that Mr. Ardito was "disabled from any productive employment." *Id.* at 184. Mr. Ardito's symptoms continued through September 1986. *Id.* at 277, 278-79, 280, 281. On September 30, 1986, Dr. Taub reported that the severe back and leg pain Mr. Ardito had been experiencing had subsided, and that

his condition had "stabilized." *Id.* at 275. Dr. Taub recommended that Mr. Ardito resume vocational training. *Id.* at 276. Mr. Ardito returned to work in April 1987. *Id.* at 999.

**II**

This case has followed a serpentine procedural path that is familiar to the parties and is set forth in the decision of Administrative Law Judge ("ALJ") Ronald Thomas. *Id.* at 977-87. Therefore, the Court will not recount that history here. Suffice it to say that Mr. Ardito's claims have endured multiple SSA Appeals Council rulings, hearings before administrative law judges, appeals to the federal district court, and remands to the SSA. The word "tortured" comes to mind when considering the procedural history of this case. Forming the basis of Mr. Ardito's current appeal is an opinion issued on August 26, 2004, by ALJ Thomas. *Id.* at 977-87. In his opinion, ALJ Thomas concluded that Mr. Ardito was not entitled to disability benefits for the period between February 1, 1983, and November 6, 1989. *Id.* at 986.

**III**

"A district court may set aside the [Social Security] Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). ALJ Thomas found, and Defendant admits, that Mr. Ardito was disabled prior to February 1, 1983. Mr. Ardito concedes that he was no longer disabled after September 30, 1986. Thus, by agreement of the parties, the current dispute is limited to whether Mr. Ardito was disabled between February 1, 1983, and September 30, 1986. *See* Supplemental Memorandum in Support of Motion Reversing Decision of Commissioner [doc. # 35] at 1; Supplemental Memorandum in Support re Order on Motion for Order [doc. # 36] at 2. Both parties also agree that Defendant bears the burden of

proving that Mr. Ardito's condition improved sufficiently that he was no longer disabled during the relevant period. *See* Admin. R. [doc. #15] at 982 (acknowledging that the SSA has the "burden of proof . . . at step five, to show medical improvement").

When deciding whether a Social Security claimant is disabled, the SSA must consider several factors, including:

> objective medical facts, diagnoses and medical opinions based on such facts, and subjective evidence of pain or disability testified to by the claimant or others. In particular, the [Social Security] Secretary is required to give considerable – and if uncontradicted, conclusive – weight to the expert opinions of the claimant's own treating physicians.

*Velazquez v. Barnhart*, No. 02CV1264, 2004 WL 367614, at *8 (D. Conn. Feb. 19, 2004) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 585 (2d Cir.1984)). The requirement that conclusive weight must be given to the uncontradicted opinion of treating physicians is known as the "treating physician rule." "That rule mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw*, 221 F.3d at 134; *see also* 20 C.F.R. § 416.927(d)(2). If an ALJ does not give a treating physician's opinion controlling weight, she must consider the following factors:

> (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist.

*Shaw*, 221 F.3d at 134 (internal citations and quotation marks omitted). Importantly, the "[r]egulations also require the ALJ to set forth her reasons for the weight she assigns to the treating physician's opinion." *Id.*

ALJ Thomas concluded that Mr. Ardito's "disability ceased due to medical improvement as of November 30, 1982."[1] Admin. R. [doc. #15] at 979; *see also id.* at 981 ("This decision holds that [Mr. Ardito's residual functional capacity] medically improved, to permit sedentary to light work, as of November 30, 1982."). However, the precise basis for this conclusion is not immediately apparent from the ALJ's decision. He first states that he chose the date "largely based upon the treating specialists' reports." *Id.* at 979. Later in the opinion, ALJ Thomas notes that by that date, Mr. Ardito's "testimony shows he had recovered from his second back surgery." *Id.* Still later in the opinion, ALJ Thomas writes that Mr. Ardito "needed a reasonable time after the second surgery, for therapy and recovery, before he could resume 'other work' with a less strenuous [residual functional capacity]." The November 30 date "gives him the benefit of the doubt by allowing a full 19 months for two lumbar-diskectomies – less invasive surgeries than his later fusion. These [residual functional capacity] and improvement findings are consistent with [Mr. Ardito's] descriptions of his activities, medications, treatment and therapy, prior to 1989." *Id.* at 981; *see also id.* at 985 ("[F]rom November 30, 1982, through October 1989, he could perform at least the full range of sedentary work for a regular work day, plus selected light duties.").

Furthermore, ALJ Thomas does not detail the specific pieces of evidence that led him to settle on a disability end-date of November 30, though he does cite the following "[p]ertinent treating specialists' reports":

> 1) In November 1981 and March 1982, orthopedist Ulrich Weil, M.D. described the claimant as disabled and "unable to engage in gainful employment." 2) After a June 1982 myelogram, Dr. Alvin Greenberg, his orthopedic surgeon, diagnosed another

[1] Though November 30, 1982, is given as the end-date for Mr. Ardito's disability, the ALJ afforded Mr. Ardito a two-month grace period for benefits, *id.* at 979, so that benefits were denied beginning on the above-noted date of February 1, 1983.

> ruptured lumbar disc. Dr. Greenberg performed the second series of lumbar disc operations in August 1982. 3) In contrast, in March 1983, a CT scan showed a mild disc protrusion. 4) In June 1984 and September 1986, Dr. Arthur Taub, the claimant's pain specialist, was limiting the claimant to sedentary to light work. The findings of the impartial physical examiner Dr. Hoerner, in July 1983, also support the chronological findings below.

*Id.* at 983 (internal citations omitted).

Based upon a thorough review of the evidence in the record, it appears to the Court that ALJ Thomas ignored the conclusions of Mr. Ardito's treating physicians. Comments from these physicians directly bearing on Mr. Ardito's ability to return to work are as follows:

- *July 1980* – Dr. Ulrich's statement that Mr. Ardito was "at present unable to return to gainful employment"
- *April 1983* – Dr. Greenberg's statement that "[t]here is no way [Mr. Ardito] can return to his former occupation in any modified form"
- *July 1984* – Dr. Taub's statement clearing Mr. Ardito for "sedentary or light work"
- *November 1984* – Dr. Taub's statement revoking his "sedentary/light work classification" and opining that Mr. Ardito "clearly continues [to be] disabled"
- *April 1985* – Dr. Greenberg's statement that Mr. Ardito was "disabled from work"
- *January 1986* – Dr. Greenberg's statement that Mr. Ardito was "disabled from any productive employment"
- *September 1986* – Dr. Taub's statement that Mr. Ardito could resume vocational training

Far from showing that Mr. Ardito was able to return to work as of November 30, 1982, these comments demonstrate that Mr. Ardito's treating physicians considered him to be disabled from any work until September 1986. The one statement to the contrary – Dr. Taub's July 1984 pronouncement that Mr. Ardito could perform light or sedentary work – was explicitly revoked by the physician who issued it only four months later based upon a further review of Mr. Ardito's condition. The conclusions of Dr. Greenberg and Dr. Taub were also consistent with Dr. Hoerner's

independent evaluation in July 1983, which noted that Mr. Ardito "would have marked difficulty performing work related activities, such as lifting, carrying, standing or walking" and deferred to Dr. Greenberg's and Dr. Taub's assessments of Mr. Ardito's sitting ability. Notably, lifting, standing and walking are all requirements of light or sedentary work. *See* Soc. Sec. Rul. 83-10, 1983-1991 Soc. Sec. Rep. Serv. 24 (describing "sedentary work" as requiring the ability to stand or walk up to one-third of the work day and to lift up to 10 pounds; describing "light work" as requiring the ability to lift up to "20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds"; and noting that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday").

Puzzlingly, ALJ Thomas's decision ignores nearly all of these findings. He does cite to Dr. Taub's July 1984 statement clearing Mr. Ardito for light or sedentary work. Yet, the ALJ fails even to mention Dr. Taub's subsequent retraction based upon further review of Mr. Ardito's condition. There is no indication in his opinion as to what evidence led the ALJ to conclude that Mr. Ardito's condition – which all sides concede had rendered him disabled before February 1, 1983 – had improved so substantially that he was no longer disabled from work. The opinion notes that in March 1983, "a CT scan showed a mild disc protrusion," but does not elucidate the import of this observation. ALJ Thomas also alludes vaguely to "descriptions of [Mr. Ardito's] activities, medications, treatment and therapy," but does not explain what these are, much less how they allow him to override the physicians' assessments. Certainly, ALJ Thomas's opinion contains nothing like the multi-factor analysis that an ALJ must undertake when disregarding a treating physician's conclusions. *See Shaw*, 221 F.3d at 134. And yet ALJ Thomas ignored not one, but two treating physicians – Dr. Greenberg and Dr. Taub – both of whom explicitly found Mr. Ardito to be disabled

at points during the relevant period.

In sum, the Court concludes that ALJ Thomas rendered his decision in violation of the treating physician rule. Rather than consider all the evidence, he cherry-picked out of the record those aspects of the physicians' reports that favored his preferred conclusion and ignored all unfavorable aspects, without ever explaining his choices, let alone basing them on evidence in the record. Such outcome-driven selectivity does not comport with the ALJ's responsibilities, particularly since Defendant bears the burden of proving that Mr. Ardito had improved and was no longer disabled during the relevant period. Therefore, ALJ Thomas's decision rests on a legal error and must be reversed.[2] *See Velazquez*, 2004 WL 367614, at *12 ("Failure to apply the correct legal standards is grounds for dismissal." (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984))).

**IV**

Given the substantial time that has elapsed since the period in question concluded, and the endless iterations this case has already endured, the Court declines to remand the case to Defendant for reconsideration of Mr. Ardito's claims. *See* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, *with or without remanding the cause for a rehearing*." (emphasis added)); *see Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004) (holding that when a court is selecting the proper remedy, "principles calling for some evaluation of relative hardships that govern a discretionary selection of alternative remedies apply, and the hardship to a claimant of further delay should be considered"). Instead, the Court remands the case to Defendant

[2] Mr. Ardito also argues that ALJ Thomas's decision was defective because it failed to consider evidence of Mr. Ardito's obesity. In view of the Court's ruling, it need not and does not consider that issue.

for a determination of the benefits due Mr. Ardito. *Cf. Butts*, 388 F.3d at 387 (instructing the district court – in light of past delays – to remand the case to the ALJ and the SSA with strict time limits, and to order that "if these deadlines are not observed, a calculation of benefits owed [plaintiff] must be made immediately").

Defendant shall determine **by August 25, 2006**, the disability benefits owed to Mr. Ardito for the period between February 1, 1983, and September 30, 1986. **The Clerk of the Court is directed to close this file.**

IT IS SO ORDERED,

/s/ Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: May 25, 2006.**